UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOY MARIE ADRIANSON,

                      Petitioner,                        Case No. 1:20-cv-952

v.                                           Honorable Paul L. Maloney

JEREMY HOWARD,

                      Respondent.
_____/

**REPORT AND RECOMMENDATION**

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Joy Marie Adrianson is incarcerated with the Michigan Department of Corrections at the Women's Huron Valley Correctional Facility (WHV) in Ypsilanti, Washtenaw County, Michigan. On September 10, 2018, Petitioner pled guilty in the Ottawa County Circuit Court to two counts of third-degree criminal sexual conduct (CSC-III), in violation of Mich. Comp. Laws § 750.520d. On October 22, 2018, the court sentenced Petitioner to concurrent prison terms of ten to fifteen years on each count.

      On September 24, 2020, Petitioner filed her habeas corpus petition raising five grounds for relief, as follows:

      I.     Offense Variable 4 was improperly scored by the trial court, in violation of a constitutional right "to be sentenced based upon factual information."

      II.    Offense Variable 8 was improperly scored and the record is [de]void of factual evidence to support the allegation.

III.    Offense Variable 12 was improperly scored in violation of the defendant's constitutional right to be sentenced upon accurate information.

IV.    The defendant was denied due process of law by the court's reliance on incorrect information and bias.

V.    The defendant's sentence was above the recommended range, and was not fashioned in [a] manner to fit this defendant.

(Pet., ECF No. 1, PageID.5-12.)

Respondent has filed an answer to the petition (ECF No. 6) stating that the grounds should be denied because they are not cognizable on habeas review, meritless, or both.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are either not cognizable on habeas review or meritless. Accordingly, I recommend that the petition be denied.

## Discussion

## I.    Factual allegations

Petitioner pleaded guilty to twice taking the penis of a 13-year-old boy into her mouth sometime between the dates of August 23, 2016, and January 1, 2017, which conduct constituted CSC-III.  (Plea Tr., ECF No. 7-11.)  In exchange for that plea, the prosecutor dismissed a charge of first-degree criminal sexual conduct (CSC-I) which carried a mandatory minimum sentence of 25 years.  (*Id.*, PageID.470-471.) Petitioner and the prosecutor agreed that Petitioner's minimum sentence would be between eight and ten years.  (*Id.*, PageID.470.)  Petitioner agreed to that sentence despite the fact that the prosecutor and her counsel estimated the guidelines minimum sentence range to be, at most, 57 to 95 months.  (*Id.*)

2

In Michigan, when a specific sentence or sentence range is made part of the plea bargain, it is known as a *Killebrew* agreement.  In *People v. Killebrew*, 330 N.W.2d 834, 842–43 (1992), the Michigan Supreme Court held that, when a defendant and the prosecutor enter into a prosecutorial recommendation of a specific sentence, the trial court may not deviate from the agreed sentence without first allowing the defendant to withdraw his or her plea.

At sentencing, the guidelines scoring yielded a minimum sentence range of 51 to 85 months.  Nonetheless, the trial court sentenced Petitioner to a minimum sentence of ten years, consistently with her plea agreement.  At sentencing, the court asked Petitioner if she concurred with the characterization that she had agreed to a minimum sentence that exceeded the anticipated guidelines to avoid the 25-year mandatory minimum sentence that would follow from a CSC-I conviction. (Sentencing Tr., ECF No. 7-12, PageID.514.)  She acknowledged that to be true.  (*Id.*)

Despite Petitioner's agreement to the sentence that was ultimately imposed, with the assistance of counsel, she sought leave to appeal to the Michigan Court of Appeals raising the same five issues she raises in the instant petition.  (Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 7-13, PageID.532-533.)  By order entered May 23, 2019, the court of appeals denied leave "for lack of merit in the grounds presented."  (Mich. Ct. App. Order, ECF No. 7-13, PageID.519.)

Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court, again raising the same five issues. (Mich. Appl. for Leave to Appeal, ECF No. 7-14, PageID.575-584.) The supreme court denied leave by order entered October 29, 2019.

## II.  AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can

review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III.    Guidelines scoring issues

Each of Petitioner's first three habeas grounds are premised on a claim that the trial court erred when it applied the sentencing guidelines to the facts of her case. In habeas ground I, Petitioner challenges the court's scoring of Offense Variable 4. That variable calls for the assessment of ten points where "[s]erious psychological injury requiring professional treatment occurred to a victim." Mich. Comp. Laws § 777.34(1)(a). The guideline indicates that even if such treatment is not sought, ten points should be assessed "if the serious psychological injury *may* require professional treatment." Mich. Comp. Laws § 777.34(2) (emphasis added).

The sentencing court asked the victim's father whether the victim had participated in any sort of counseling or professional treatment. (Sentencing Tr., ECF No. 7-12, PageID.490.) The father responded that the boy had been in counseling with the father—a pastoral minister—with the guidance of the father's friends who were also counselors. (*Id*., PageID.490-491.) The father was clear that

Petitioner's crimes had changed the boy to his psychological detriment.   (*Id*.,
PageID.492.)

Based on the father's statements and the information in the presentence
investigation report, the court concluded that the victim was receiving professional
treatment and that the victim "may definitely require professional treatment . . . ."
(*Id*., PageID.495-496.)   Accordingly, the court assessed ten points under Offense
Variable 4.   Petitioner argues that the treatment provided to the victim was not
professional psychological counseling.   (Pet., ECF No. 1, PageID.5.)   The court of
appeals concluded that Petitioner's challenge to that decision lacked merit.   (Mich.
Ct. App. Order, ECF No. 7-13, PageID.519.)

In habeas ground II, Petitioner challenges the court's scoring of Offense
Variable 8.   That variable calls for the assessment of fifteen points where "[a] victim
was asported to another place of greater danger or to a situation of greater danger or
was held captive beyond the time necessary to commit the offense."   Mich. Comp.
Laws § 777.38(1)(a).   The sentencing court concluded that the assessment was proper
because Petitioner lured the victim into the laundry room and her bedroom to commit
the assaults—and even locked her bedroom door—to reduce the likelihood that her
crimes would be discovered.   (Sentencing Tr., ECF No. 7-12, PageID.497–498.)
Petitioner argues that, at least some of the time, the victim entered the laundry room
first and that she never detained the victim there.   (Pet., ECF No. 1, PageID.7.)   The
court of appeals concluded that Petitioner's challenge to the assessment lacked merit.
(Mich. Ct. App. Order, ECF No. 7-13, PageID.519.)

In habeas ground III, Petitioner challenges the court's scoring of Offense Variable 12. That variable calls for the assessment of one point where Petitioner committed "[o]ne contemporaneous felonious criminal act involving any other crime . . . ." Mich. Comp. Laws § 777.42. A criminal act is deemed to be contemporaneous where it is committed within 24 hours of the sentencing offense and has not and will not result in a separate conviction. *Id.* The prosecutor argued, and the court found, that at the same time Petitioner took the boy's penis into her mouth, the boy had digitally penetrated Petitioner's vagina. (Sentencing Tr., ECF No. 7-12, PageID.499-500.) The court determined that was a contemporaneous felonious act that warranted the assessment of one point.

Petitioner argues that the trial court must have been relying on the digital penetration that occurred in close temporal proximity to the time she took the boy's penis into her mouth while he was still twelve years old.[1] She contends that charge

---

[1] The victim's testimony indicated that sexual contact occurred many times—sometimes as often as weekly, according to the victim's preliminary examination testimony—from July of 2016 to January of 2017. (Prelim. Exam. Tr., ECF No. 7-2.) The charges were not tied to specific dates; rather, they were tied to a range of dates. Petitioner was twelve-years-old at the time of the first incident; however, he was thirteen-years-old for most of the incidents. The CSC-I charge, by definition, was necessarily based on an incident that occurred when the victim was twelve-years-old. The CSC-III charges, on the other hand, by definition, were based on incidents that occurred when the victim was thirteen-years-old. Therefore, Petitioner's argument that the court must be considering the dismissed charge when scoring Offense Variable 12 is plainly wrong. Because the "contemporaneous felonious criminal act" must occur within 24 hours of the sentencing offense, it could not be based on the incident that occurred when the victim was twelve years old. There was ample evidence in the preliminary examination testimony of the victim that he digitally penetrated Petitioner within the necessary temporal proximity to her taking the victim's penis into her mouth after the victim's thirteenth birthday to support the

9

was dismissed and the conduct should not be taken into account when scoring the guidelines for the other charges. The court of appeals concluded that Petitioner's challenge to the assessment lacked merit. (Mich. Ct. App. Order, ECF No. 7-13, PageID.519.)

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Petitioner's challenges, as outlined above, contest the sentencing court's application

---

conclusion that the digital penetration would be a contemporaneous felonious criminal act.

of the state sentencing guidelines.  Such challenges are not cognizable on habeas review.  As the Supreme Court explained in *Estelle*, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. at 67–68.  The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  The court of appeals' determination that the guidelines scoring was proper is, therefore, axiomatically correct on habeas review.

In Petitioner's case, however, any errors with regard to the scoring of the sentencing guidelines are ultimately of no consequence because the trial court did not sentence Petitioner based on her guidelines score.  The trial court sentenced Petitioner based on her agreement to a minimum sentence that would fall between eight and ten years—a minimum that was significantly higher than the minimum range dictated by Petitioner's guidelines score.

Petitioner specifically agreed to the ten-year minimum sentences imposed by the trial court.  The sentence agreement "'obviates the scoring of the sentencing guidelines[.]'" *People v. Dunbar*, No. 333510, 2017 WL 5759754, at *4 (Mich. Ct. App. Nov. 28, 2017) ("[D]efendant was sentenced pursuant to a plea agreement, rather than the sentencing guidelines . . . ."); *see also United States v. Cieslowski*, 410 F.3d 353, 364 (7th Cir. 2005) (concluding that the sentence imposed under a plea agreement "arises directly from the agreement itself" and not from the sentencing

11

guidelines), *cited in People v. Velez*, No. 315209, 2015 WL 5945364, at *4 (Mich. Ct. App., Oct. 13, 2015) (P.J. Boonstra concurring) ("[B]ecause defendant agreed to a sentence within the guidelines range, the sentence imposed by the trial court 'arose directly from the plea agreement and was not based on any facts found only by the trial court.'"); *People v. Banks*, No. 326795, 2016 WL 3946207, at *2 (Mich. Ct. App., July 21, 2016); *People v. Faher*, No. 328285, 2016 WL 6127902. at *4 (Mich. Ct. App. Oct. 18, 2016) ("[W]hen a sentencing court imposes a sentence pursuant to the terms of a plea agreement bargained for and accepted by the defendant, the sentence is not affected by the court's perception of the mandatory or advisory nature of the sentencing guidelines . . . ."). By agreeing to a specific sentence, or a range, Petitioner waived the challenges she now raises. *See, e.g., People v. Wiley*, 693 N.W.2d 800 (Mich. 2005) (where defendant agreed to a minimum sentence of 38 years, but guidelines range was fifteen to 25 years, the court held "a defendant waives appellate review of a sentence that exceeds the guidelines by understandingly and voluntarily entering into a plea agreement to accept that specific sentence."); *People v. Cobbs*, 505 N.W.2d 208, 213 (Mich. 1993) ("[W]e caution that a defendant who pleads guilty or *nolo contendere* with knowledge of the sentence, and who later seeks appellate sentence relief under *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990), must expect to be denied relief on the ground that the plea demonstrates the defendant's agreement that the sentence is proportionate to the offense and offender.").

Because Petitioner was sentenced based on her agreement—and not the guidelines—Petitioner's contentions that Offense Variables 4, 8, or 12 were improperly scored, not based on factual information, not based on sufficient evidence, or not based on accurate information, fail to raise a cognizable claim. Therefore, Petitioner cannot show that the state court's rejection of those claims is contrary to, or an unreasonable application of clearly established federal law, and she is not entitled to habeas relief.

## IV.    Sentence based on false information

Although guidelines scoring issues raise state law claims, and not federal constitutional claims, it is well established that a court violates due process when it imposes a sentence based upon materially false information. *United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 740 (1948) (citation omitted). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447. Petitioner has not made – and cannot make – the showing required under *Tucker*.

First, Petitioner never claims that the information considered by the sentencing court was "false." For example, with regard to Offense Variable 4, she claims that the counseling identified by the sentencing court does not qualify for an assessment of ten points under the guideline. With regard to Offense Variable 8, she claims that the facts are not sufficient to support the conclusion that she asported or detained the victim. And with regard to Offense Variable 12, she contends that the

sentencing court improperly relied on dismissed conduct to score the variable.[2] Petitioner never identifies any "false" fact.  At best, she argues that the court's conclusions are based on misapplications of state law.

Second, Petitioner cannot show that the court relied on the "false" information discussed during the court's scoring of the guidelines.  The court expressly stated it was sentencing Petitioner on the terms of the plea agreement.  (Sentencing Tr., ECF No. 7-12, PageID.515-516.)  The court selected the high end of that range "because of the events that occurred and the number of times they occurred and all of the details that happened."  (*Id.*, PageID.516.)  With regard to those factors, the transcript reveals that the court relied on the victim's preliminary examination testimony and the presentence investigation report.  Petitioner does not identify any "false" information from those sources.

Petitioner has failed to show that the court of appeals' rejection of her claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, she is not entitled to habeas relief on this claim.

## V.   Sentence based on insufficient evidence

Petitioner's attack on the scoring of the sentence guidelines variables also contends that her sentence is constitutionally infirm because it is not based on sufficient evidence.  In the context of sentencing, however, whether or not the evidence preponderated or was "sufficient" to demonstrate particular facts is not a constitutional issue.

---

[2] Petitioner is plainly wrong in her characterization of the court's determination. *See supra* at 8, n.1.

14

The Sixth Circuit described the scope of constitutional protection at sentencing as follows:

> But the Due Process Clause does not offer convicted defendants at sentencing the same "constitutional protections afforded defendants at a criminal trial." *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc). "[B]oth before and since the American colonies became a nation," *Williams v. New York* explains, "courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." 337 U.S. 241, 246 (1949). That tradition has become more settled over time, because "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant—if not essential—to [the judge's] selection of an appropriate sentence." *Id.* at 247. An imperative of "evidentiary inclusiveness"—"a frame of reference as likely to facilitate leniency as to impede it," *United States v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013)—explains why the Evidence Rules, the Confrontation Clause, and the beyond-a-reasonable-doubt standard of proof do not apply at sentencing. *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) (beyond a reasonable doubt); *Williams v. New York*, 337 U.S. at 246–47, 252 (Evidence Rules); *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir.2006) (Confrontation Clause); *see generally United States v. Tucker*, 404 U.S. 443, 446 (1972).

*United States v. Alsante*, 812 F.3d 544, 547 (6th Cir. 2016). In *McMillan v. Pennsylvania*, 477 U.S. 79 (1986),[3] the Supreme Court acknowledged that

---

[3] *McMillan* was overruled in *Alleyne v. United States*, 570 U.S. 99 (2013). *See United States v. Haymond*, 139 S.Ct. 2369, 2378 (2019) ("Finding no basis in the original understanding of the Fifth and Sixth Amendments for *McMillan* and *Harris* [*v. United States*, 536 U.S. 545 (2002)], the [*Alleyne*] Court expressly overruled those decisions . . . ."). The *McMillan* holding that was overruled, however, was the principle that factors implicating mandatory minimum sentences did not require proof beyond a reasonable doubt. The underlying premise from *McMillan* quoted above—that there is no constitutionally required standard of proof to support discretionary sentencing decisions—survived *Alleyne* and, indeed, was effectively highlighted by *Alleyne*, when the *Alleyne* Court distinguished mandatory from discretionary sentencing decisions. None of the cases in the line of authority that culminated in *Alleyne*—*Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v.*

"sentencing courts have always operated without constitutionally imposed burdens of proof . . . ."  *Id.* at 92 n.8.[4]

In *United States v. Watts*, 519 U.S. 148, 156 (1997), the Supreme Court noted that proof by a preponderance of the evidence at sentencing would satisfy due process, but the Court did not say that due process requires it.  Rather, in *Watts*, it was the federal sentencing guidelines that required proof by a preponderance of the evidence and the Court only considered whether a higher standard—such as clear and convincing evidence—was constitutionally required.  Thus, *Watts* was not an attempt to establish the bottom limit of constitutional propriety, it merely held that a preponderance of the evidence standard of persuasion was constitutionally acceptable, even for acquitted conduct.[5]

---

*Booker*, 543 U.S. 220 (2005)—suggest that the constitutionally required burden of proof that applies to facts found in support of mandatory maximum or minimum sentences applies to discretionary sentences.

[4] Even the term "burden of proof" can be misleading.  As the Supreme Court noted in *Mullaney v. Wilbur*, 421 U.S. 684 (1975), "[c]ontemporary writers divide the general notion of 'burden of proof' into a burden of producing some probative evidence on a particular issue and a burden of persuading the factfinder with respect to that issue by a standard such as proof beyond a reasonable doubt or by a fair preponderance of the evidence."  *Id.* at 695 n.20.  Generally, the constitution places the burden of production and persuasion on the prosecutor to prove the elements of a charged offense and the standard of persuasion is "beyond a reasonable doubt."  There are times, however, where the constitution permits the placement of the burden of production and persuasion on the defendant, for example, with regard to affirmative defenses.  It might be less confusing to refer to the required persuasive impact of the evidence as the standard of persuasion rather than the burden of proof.

[5] As a practical matter, the preponderance of the evidence standard might be the lowest acceptable standard of persuasion, not because of the due process clause, but because anything lower than "more likely than not" is not really persuasive at all.

Even though the State of Michigan may require that facts supporting a sentence be proven by a preponderance of the evidence, that requirement is a matter of state law, not the constitution.  Consequently, a sufficiency-of-the-evidence claim for sentencing, at least for a non-capital offense, is not cognizable on habeas review. Petitioner's challenge to the state court's sentences based on sufficiency of the evidence, therefore, fails to show that her sentence is contrary to, or an unreasonable application of, clearly established federal law.  Petitioner is not entitled to habeas relief on this claim.

## VI.   Proportionate and individualized sentencing

Petitioner contends that her sentences were "not fashioned in [a] manner to fit this defendant" and were "disproportionate to the offense and this offender . . . ." (Pet., ECF No. 1, PageID.12.)  Proportionality of a sentence to the offense and the offender is not a federal constitutional requirement; rather, it arises under state law. In *People v. Milbourn,* 461 N.W.2d 1 (Mich. 1990), the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9–11.  The "prescribed sentence range" identified in *Milbourn*, however, was not the minimum sentence range generated by statutory guidelines.  At the time *Milbourn* was decided, there were sentencing guidelines, but they were a creation of the courts.  *See* McComb, *An overview of the second edition of the Michigan sentencing guidelines,* 67 Mich. B. J.

863, 864 (1988) (setting out the history of the development of sentencing guidelines in Michigan through 1988).

In 1998, the Michigan Legislature enacted statutory sentencing guidelines. Mich. Comp. Laws § 777.1 et seq.  The statutory guidelines permitted departures if there was a "substantial and compelling reason for the departure . . . state[d] on the record . . . ."  Mich. Comp. Laws § 769.34(3).  The guidelines also effectively immunized from state-law the proportionality of minimum sentences that fell within the guidelines range.  Mich. Comp. Laws § 769.34(10) ("If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence.").  Because the guidelines were created with reference to the principle of proportionality, further scrutiny of the sentences generated by application of the guidelines was unnecessary.  *People v. Babcock*, 666 N.W.2d 231, 239–241 (Mich. 2003).  The *Babcock* court concluded that minimum sentences outside the guidelines range required a determination whether there was, indeed, a substantial and compelling reason to justify the departure.  *Id*. at 243–44.

In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court effectively stripped away the requirement that the trial court have a substantial and compelling reason for departing from the sentencing guideline because it was that requirement that, in part, rendered the guidelines mandatory and called into question their constitutionality under the line of authority beginning

18

with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and continuing in *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013). *Lockridge*, 870 N.W.2d at 518, 520–21. Without the "substantial and compelling reason" guidepost, there was no longer a standard by which to judge the propriety of departure sentences. The *Lockridge* majority held that, going forward, departure sentences would be reviewed for "reasonableness." *Id*. at 521.

The Michigan Supreme Court elaborated on the meaning of reasonableness in *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017). *Steanhouse* based its definition of a reasonable sentence on the definition of proportionality from *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). Nearly three decades later, the Michigan Supreme Court had come full circle: a sentence departing from the guidelines was improper if it was disproportionate.

It is plain that *Milbourn*, and thus *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] . . . essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v.*

19

*Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus.").  Because this Court has no power to intervene on the basis of a perceived error of state law, *see Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41, Petitioner's proportionality claim, to the extent it is based on *Milbourn* and/or *Steanhouse,* is not cognizable in a habeas corpus action.

The same proportionality principles are not present in the United States Constitution's Eighth Amendment.  That is so despite the fact that the *Milbourn* opinion quotes *Weems v. United States*, 217 U.S. 349, 367 (1910):  "It is a 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'"  *Milbourn*, 461 N.W.2d at 9.  But the quote from *Weems* is somewhat misleading.  *Weems* was not an Eighth Amendment case.

At issue in *Weems* was not a sentence imposed by a state, or even the United States, but one imposed by the supreme court of the Philippines.  Mr. Weems' crime was making two false entries in a "wages paid" logbook relating to lighthouse services.  His punishment for that crime was significant.  *See Weems*, 217 U.S. at 365–66.

The measure of that punishment was not the United States Constitution.  In *Weems*, the United States Supreme Court was interpreting the "cruel and unusual" punishment clause of the Bill of Rights of the Philippine islands.  Moreover, the "precept of justice" referenced was not one adopted by the United States Supreme Court or by any court of the islands; it was a belief attributed to persons "who have

20

formed their conception of the relation of a state to even its offending citizens from the practice of the American commonwealths . . . ." *Id.* at 367.

The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and her sentence falls within the maximum penalty under state law. Petitioner's sentence does not present the extraordinary case that warrants deeper inquiry into reasonableness and proportionality or that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

21

Petitioner also complains that her sentences were not fashioned to fit her situation; in other words, that her sentences were not individualized. The concept of an "individualized" sentence has been discussed by the United States Supreme Court, but as a "prevalent modern philosophy of penology," not a constitutional mandate. *Williams v. New York*, 337 U.S. 241, 247 (1949). Even Michigan Supreme Court authority discusses individualized sentencing as a principle of the modern view of sentencing, not a constitutional requirement. *See, e.g., People v. Triplett*, 287 N.W.2d 165, 166–67 (Mich. 1980); *see also People v. McFarlin*, 208 N.W.2d 504, 513 (Mich. 1973) ("The modern view of sentencing is that the sentence should be tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential.").

Federal authority likewise concludes, with two possible exceptions not applicable here,[6] that individualized sentences are not constitutionally required. *Harmelin*, 501 U.S. at 995 ("Our cases creating and clarifying the 'individualized capital sentencing doctrine' have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties."); *see also Lockett v. Ohio*, 438 U.S. 586, 604–05 (1978) (in a case holding that mitigating factors must be fully considered in death penalty cases, the Court "recognize[d] that, in noncapital cases, the established practice of

---

[6] The two possible exceptions are a sentence of death, and a sentence of life imprisonment without possibility of parole for a juvenile offender—which is like "the death penalty itself." *Miller v. Alabama*, 567 U.S. 460, 470 (2012).

individualized sentences rests not on constitutional commands, but on public policy enacted into statutes."). The Sixth Circuit has acknowledged that "there is no constitutional right to individualized sentencing in non-capital cases." *United States v. Odeneal*, 517 F.3d 406, 415 (6th Cir. 2008); *see also United States v. Graham*, 622 F.3d 445, 454 (6th Cir. 2010); *Thomas*, 49 F.3d at 261; *United States v. Gardner*, 931 F.2d 1097, 1099 (6th Cir. 1991); *United States v. Ruffin*, 783 F. App'x 478, 483 (6th Cir. 2019); *Hynes v. Birkett*, 526 F. App'x 515, 522 (6th Cir. 2013); *United States v. Holmes*, 11 F. App'x 408, 409 (6th Cir. 2001); *United States v. Levy*, 904 F.2d 1026, 1035 (6th Cir. 1990); *but see United States v. Corum*, 354 F. App'x 957, 963 (6th Cir. 2009) ("The government and Defendant both raise arguments about whether there is a constitutional right to an individualized sentence for non-capital defendants. It is not fully settled whether there is such a constitutional right, though some precedent in this Circuit may have suggested otherwise."). Therefore, any claim that Petitioner was denied an individualized sentence is not cognizable on habeas review.

The court of appeals' rejection of Petitioner's claims that her sentences were disproportionate and not individualized is not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, she is not entitled to habeas relief on these claims.

## VII.    Judicial bias

Petitioner also claims that the sentencing judge demonstrated unconstitutional bias against her. "[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal,' [citation omitted], before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*,

520 U.S. 899, 904-905 (1997).  However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal quotations omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009) ("The difficulties of inquiring into actual bias . . . simply underscore the need for objective rules.").

The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases:  (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1927); (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Offut v. United States*, 348 U.S. 11, 17 (1954); *see also Taylor v. Hayes*, 418 U.S. 488 (1974); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 136 S. Ct. at 1905.  The courts indulge "a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) 421 U.S. at 47.  "The presumption of impartiality stems not merely from the judicial-bias caselaw, *see* [*Withrow*], but from the more generally applicable presumption that judges know the law and apply it in making their decisions, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n. 4 (1997), and the even more generally applicable presumption of regularity, *see Parke v. Raley*, 506 U.S. 20, 30-31 (1992);

*United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)." *Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013).

In *Liteky v. United States*, 510 U.S. 540 (1994),[7] the Supreme Court described the showing Petitioner would have to make to succeed on his bias claim:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp.*, 384 U.S. at 583. In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted). *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and

---

[7] *Liteky* is a case that addresses the statutory recusal standard for federal judges. The Sixth Circuit has, nonetheless, relied on *Liteky* to provide the standard for assessing judicial bias claims under the Due Process Clause. *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002); *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006).

short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky*, 510 U.S. at 555–556 (emphasis in original).

The Michigan Court of Appeals, in a form order, rejected Petitioner's bias argument as meritless  But, the fact that the analysis is curt does not make it unreasonable.  The record supports the conclusion that the trial judge's statements at the sentencing were "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" and, thus, "do not constitute a basis for a bias or partiality motion . . . ." *Liteky*, 510 U.S. at 555–556.  The court of appeals' rejection of Petitioner's claim, therefore, is neither contrary to, nor an unreasonable application of, clearly established federal law, and she is not entitled to habeas relief on her bias claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529

U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Accordingly, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that she is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:  July 12, 2021                                    /s/ Phillip J. Green
                                                         PHILLIP J. GREEN
                                                         United States Magistrate Judge


## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).